# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DUSTIN E. SEAMAN,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-206
Black, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Dustin Seaman brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 16).

## I. Procedural Background

Plaintiff filed his applications for DIB and SSI in July 2014, alleging disability since August 31, 2011 due to severe scoliosis, left hemiparesis, brain damage, limb length discrepancy, panic disorder, brief psychosis, depression, Attention Deficit Disorder ("ADD"), and visual transfer disorder. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Catherine Ma. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ video conference hearing on May 12, 2017. On June 22, 2017, ALJ Ma issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Ma the final decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since August 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: cerebral palsy, affective disorder, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The [plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The [plaintiff] can stand and walk 4 hours of an 8 hour work day. The [plaintiff] can frequently push and pull with his left lower extremity. The [plaintiff] can occasionally climb ramps and stairs. The [plaintiff] can never climb ladders, ropes, and scaffolds. The [plaintiff] can occasionally balance, stop, kneel, and crouch. The [plaintiff] can never crawl. The [plaintiff] can frequently reach overhead with his left arm. The [plaintiff] can frequently handle and finger with his left hand. The [plaintiff] can frequently be exposed to hazards. The [plaintiff] can perform simple routine tasks and routine work place changes. The [plaintiff] can perform work that is not production-rate or pace work.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1985 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 31, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-25).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff has relevant work as a palletizer operator, a light, semi-skilled position; and a store clerk, a heavy semi-skilled position, light as performed. (Tr. 23, 57).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as parking lot attendant (100,000 jobs in the national economy); cashier (300,000 jobs in the national economy); and routing clerk (70,000 jobs in the national economy). (Tr. 24, 58-59).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

On appeal, plaintiff alleges a single assignment of error: that the ALJ erred in formulating his residual functional capacity ("RFC") by discounting his subjective complaints of his left-hand limitations. (Docs. 9, 16).

### 1. <u>Evidence related to plaintiff's left-hand impairment[3]</u>

---

[3] Plaintiff's statement of errors solely argues that the ALJ erred in assessing the RFC as it relates to his left-hand impairment. Therefore, the Court will only summarize medical evidence related to plaintiff's left-hand impairment.

On November 3, 2014, plaintiff underwent a consultative examination conducted by Dr. Samuel Wilchfort, M.D. (Tr. 588-91). Plaintiff reported that he had cerebral palsy involving the left upper and lower extremity stemming from a perinatal injury. Plaintiff also complained of low back pain, which he explained had been ongoing for years, and he was told he had scoliosis. During the physical examination, plaintiff was able to dress and undress by himself. Dr. Wilchfort noted that plaintiff was right-handed. Dr. Wilchfort noted that plaintiff appeared to have decreased muscle mass in the left upper and left lower extremity. He also had an antalgic gait with a foot drop on the left. Dr. Wilchfort listed plaintiff's problems as:

> Cerebral palsy involving the left upper extremity. He has a spastic paresis. He is unable to oppose the thumb, for instance to digits 4 and 5; and he has decreased range of motion in the wrists and digits 1 and 2. He keeps his left upper extremity in a partially flexed position, although he is able to extend[] it spontaneously. Lower extremity, he has a footdrop or marked decreased muscle mass.

(Tr. 589).

State agency physician Dr. Howard Goldbas, M.D., reviewed the record on November 10, 2014 on initial consideration. Dr. Goldbas opined that plaintiff was capable of light work except that he was limited in the left lower extremity with the following limitations: push/pull limited to frequently; he could occasionally climb ramps/stairs, balance, kneel, crouch, or stoop; he could never climb ladders/ropes/scaffolds or crawl; limited to frequent reaching, handling and fingering; and limited to avoiding heavy machinery and unprotected heights. (Tr. 71-73). State agency physician Dr. Arvind Chopra, M.D., reviewed the record for reconsideration purposes in April 2015 and affirmed Dr. Goldbas's assessment. (Tr. 99-102).

On August 12, 2014, plaintiff completed a function report, in which he reported that his daily activities involve spending time showering, getting dressed, talking with family members, doing light housework, reading, and watching television. (Tr. 277). Plaintiff wrote that he is

able to prepare his own meals such as microwave meals, sandwiches, and easy dinners, and do light household chores such as sweeping, straightening up his room, and putting clothes away daily. (Tr. 279). Plaintiff wrote that his physical conditions affect lifting, squatting, walking, sitting, stair climbing, using hands, bending, standing, reaching, kneeling, and completing tasks. (Tr. 281-82). Plaintiff indicated that reaching fully is impossible because of left hemiparesis and using his hands is very difficult because his left hand stayed in a fist because of left hemiparesis. (Tr. 282). Plaintiff stated his left hand stayed clenched in a fist because of his left hemiparesis. (Tr. 282).

In January 2015, plaintiff completed a disability report where he reported he had almost no grasp in his left hand, and it became worse with cold weather. (Tr. 290-91). Plaintiff stated that "[w]eather affects the use of my left hand and left leg, in cold weather the muscles tighten up to make it very difficult to use my hand at all." (Tr. 290). Plaintiff reported that he could not do activities that require the use of both hands. (Tr. 291).

On March 26, 2015, at the reconsideration claim level, plaintiff reported in his function report weakness and very low dexterity in his left hand and leg which make dressing painful and long. When asked about personal care, he reported showering was difficult with one hand and takes longer than average, he is able to feed himself using mostly one hand, and using the toilet takes a little longer than average as he uses his right hand primarily. (Tr. 309).

Plaintiff testified at the administrative hearing that he is right handed and he drives without restrictions. (Tr. 38). Plaintiff testified that he can use his left hand a little bit to help move things around, but he cannot grasp objects for too long. (Tr. 44). Plaintiff testified that his left leg is a bit shorter than his right and he is off balance which causes a lot of weakness in his left leg muscles. (Tr. 47). He testified that he cannot do any fine motor skills with his left hand,

nor is he able to type with his left hand. (Tr. 48). Plaintiff testified that "[a]nything that requires fine movement with my left hand is pretty much impossible." (*Id.*) Plaintiff testified that he is not really able to use the left hand to assist with preparing meals. (Tr. 48). Plaintiff stated that he is able to load and unload the laundry one-handed. (Tr. 49). He also washes in the shower, ties shoes, and buttons his clothes using one hand. (Tr. 54-55).

## 2. The parties' arguments

Plaintiff argues that the ALJ erred in weighing his subjective complaints of left-hand limitations and by concluding that the limitations assessed in the RFC are consistent with his ability to prepare his own meals, attend to his own personal care, and perform light household chores despite limitations with his left upper extremity. (Doc. 9 at 7-8). Plaintiff argues that the ALJ failed to cite to any evidence indicating that plaintiff performs these activities with his left hand. (*Id.* at 9). Plaintiff contends that "[n]one of the evidence of record is consistent with Plaintiff utilizing his left hand to perform any of these activities, let alone perform them on a frequent basis." (*Id.* at 8-9).

In response, the Commissioner argues that the ALJ fully considered plaintiff's limitations in his left hand and his subjective complaints of left-hand limitations when assessing the RFC. (Doc. 15 at 3-4). The Commissioner argues that the ALJ fully considered the consultative opinion of Dr. Samuel Wilchfort, which was the only time-relevant evidence in the record regarding plaintiff's left-hand impairment. (*Id.*). The Commissioner also argues that the ALJ fully considered plaintiff's two function reports, as well as the opinions of the state agency reviewing physicians who also reviewed Dr. Wilchfort's report. (*Id.* at 4). The Commissioner contends that the ALJ reasonably relied on these findings to conclude that plaintiff's subjective complaints of his hand impairment were not fully credible. (*Id.* at 4-5). The Commissioner

8

further contends that the ALJ properly considered that plaintiff retained the ability to prepare his own meals, attend to his own personal care, and perform light household chores despite left hand and arm limitations in the context of weighing the opinions of the state agency reviewing physicians, who opined that plaintiff could frequently handle and finger with his left hand. (*Id.* at 6).

In reply, plaintiff maintains that there is no support for the ALJ's conclusion that his ability to prepare meals, attend to personal care, and perform light household chores is consistent with his ability to frequently handle and finger with his left hand. (Doc. 16 at 2). Plaintiff argues that Dr. Wilchfort's consultative examination is wholly consistent with his testimony. (*Id.* at 3).

### 3. **Resolution**

The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision issued in this case on April 28, 2017. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (Report and Recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

9

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, *3-8. The ALJ's assessment of a claimant's subjective complains and limitations must be supported by substantial evidence and based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of this decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

The ALJ conducted a thorough review of the record and evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 16-3p. The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (Tr. 18). In making this determination, the ALJ cited the (1) lack of supporting objective medical evidence, (2) plaintiff's daily activities, and (3) the medical

10

opinion evidence of state agency reviewing physicians Drs. Goldbas and Chopra. (Tr. 19). These factors substantially support the ALJ's finding that plaintiff's allegations regarding his symptoms were not entirely consistent with the medical and other evidence of record.

Substantial evidence supports the ALJ's determination that the longitudinal medical evidence does not support the severity of left-hand limitations that plaintiff described in his hearing testimony and disability function reports. The ALJ noted that plaintiff was diagnosed with cerebral palsy involving the left upper and lower extremity since childhood. (Tr. 18) (citing Exhs. 1F, 2F, 3F). Despite this diagnosis, the ALJ noted that "no other medical records other than the consultative examination were provided regarding the [plaintiff]'s symptoms and treatment for his left hand." (Tr. 19). Under these circumstances, the ALJ reasonably considered the findings of consultative examiner Dr. Wilchfort, as well as the opinions of state agency reviewing physicians Drs. Goldbas and Chopra, to discount plaintiff's subjective complaints of his left-hand limitations and formulate the RFC. In their reviewing opinions, Drs. Goldsbas and Chopra considered Dr. Wilchfort's examination and noted that plaintiff had cerebral palsy and was unable to oppose his left thumb to his 4th and 5th fingers and had difficult fully extending his left 1st and 2nd fingers. (Tr. 73, 101). In light of these limitations assessed by Dr. Wilchfort, as well as plaintiff's daily activities, the ALJ accorded "great weight" to the conclusions of Drs. Goldbas and Chopra that plaintiff was limited to "frequent" reaching, handling, and fingering. (Tr. 17, 72, 100). In assigning "great weight" to the opinions of Drs. Goldbas and Chopra, the ALJ noted:

> [I]n light of the [plaintiff]'s left hand limitation, the [plaintiff]'s ability to handle and finger was reduced to frequent. These limitations are consistent with the [plaintiff]'s statements that he is able to prepare his own meals, attend to his own personal care, and perform light household chores despite limitations with his left upper extremity (6E/5-7; 12E/4-5).

11

(Tr. 20). Plaintiff has not shown how the ALJ erred in according "great weight" to the opinions of the state agency reviewing physicians. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (the opinions of state agency consultants may be entitled to significant weight where they are supported by record evidence) (citing 20 C.F.R. § 404.1527(e)(2)(i)).

In addition to the lack of objective evidence to support plaintiff's allegations of disabling left-hand limitations, the ALJ reasonably relied on plaintiff's daily activities that she found were inconsistent with plaintiff's allegations of disabling impairments. In concluding that plaintiff's daily activities were not entirely consistent with his complaints of disabling left-hand limitations, the ALJ noted that plaintiff retained the ability to drive without restrictions, perform light household chores in 10-minute intervals, care for his hair, feed himself, and use the bathroom on his own. (Tr. 22). The ALJ noted that plaintiff only reported occasional difficulty dressing, bathing, and shaving. (*Id.*).

Plaintiff primarily disagrees with the ALJ's reliance on these daily activities to discount his subjective complaints of left-hand limitations because "[t]he ALJ fails to reference any evidence indicating that Plaintiff performs any of the cited activities utilizing his left hand." (Doc. 9 at 9). However, in addition to the lack of supporting objective evidence, plaintiff's testimony and function reports do not support his allegations of totally disabling left-hand limitations. At the hearing, when asked by the ALJ "you were able and you used your left hand when you were performing your work at Best Buy," plaintiff responded that he could use his left hand "a little bit to help move stuff around, but [he] can't grasp objects too well for too long." (Tr. 44). Plaintiff also testified that he can "move around and lift" some with his left hand. (Tr. 48).

Plaintiff argues that many of his daily activities take longer than normal or are performed primarily using his right hand. (Doc. 9 at 9). Assuming, *arguendo*, that the ALJ misconstrued plaintiff's testimony and function reports when evaluating plaintiff's subjective complaints on his left-hand limitations, such an error is harmless. The Sixth Circuit has held that in a case such as this where an adverse credibility determination is based in part on invalid reasons, a harmless error analysis applies and the ALJ's decision will be upheld as long as substantial evidence remains to support it. *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506-07 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)). The VE testified that plaintiff could perform the representative requirements of jobs such as routing clerk, parking lot attendant, and cashier, regardless of whether he was limited to "occasional" or "frequent" left fingering and handling. (Tr. 59-60). In Social Security law, "occasionally" is defined as occurring from very little to up to 1/3 of the time. Social Security Ruling 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Plaintiff has not presented objective or medical opinion evidence demonstrating, nor does his testimony fully support, that he is precluded from using his left-hand very little to up to 1/3 of the time.

Overall, the ALJ reasonably determined that plaintiff's allegations of disabling left-hand limitations were not supported by the record as a whole, including plaintiff's daily activities and the opinions of the state agency reviewing physicians. Where, as here, the ALJ's assessment of plaintiff's subjective allegations of his limitations is supported by substantial evidence, the Court affords great weight and deference to the ALJ's finding. *Walters*, 127 F.3d at 531. Accordingly, plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 8/5/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DUSTIN E. SEAMAN,
Plaintiff,

Case No. 1:18-cv-206
Black, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).